Wayne YVON, et al., Plaintiffs,

v.

BAJA MARINE CORPORATION,
et al., Defendants.

No. 4:06cv572–RH/WCS.

United States District Court,
N.D. Florida,
Tallahassee Division.

Feb. 20, 2007.

Douglas Randolph Peacock, Jr., Kahn & Associates LLC, Tampa, FL, for Plaintiffs.

Charles Pendleton Mitchell, Steven Ira Klein, Rumberger Kirk & Caldwell, Orlando, FL, for Defendants.

### ORDER DISMISSING LEMON LAW CLAIMS AND DENYING MOTION TO DISMISS OTHER CLAIMS

HINKLE, Chief Judge.

This action, involving an allegedly faulty 23–foot sportfishing boat, arises under the Magnuson–Moss Warranty Act, the Florida Lemon Law, the Florida Uniform Commercial Code, and the Florida Deceptive and Unfair Trade Practices Act. Defendants Baja Marine Corporation and Mercury Marine have filed substantially identical motions to dismiss portions of the complaint.

The rules of pleading applicable in federal court are those set forth in the Federal Rules of Civil Procedure. This is true whether the cause of action arises under federal or state law. The test of the sufficiency of a complaint is not whether it has alleged with precision everything the plaintiff will have to prove in order to prevail at trial. Instead, a motion to dismiss for failure to state a claim should be granted only if it appears to a certainty that the plaintiff would be unable to recover under any set of facts that could be proved in support of the complaint. *See, e.g., Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Hunnings v. Texaco, Inc.,* 29 F.3d 1480, 1484 (11th Cir.1994); *see also Swierkiewicz v. Sorema,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (rejecting assertion that complaint could be dismissed for failure to plead all elements of a Title VII prima facie case and noting that a complaint need only include a short and plain statement of the claim; defendants may obtain further details through discovery); *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168–69, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993) (reversing dismissal of complaint for failure to plead with sufficient detail and adding, "federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later").

Judged by these standards, some portions of plaintiffs' complaint in the case at bar are sufficient and some are not.

## Lemon Law

■ Defendants argue for dismissal of count I because a boat is not a "motor vehicle" covered by Florida's Lemon Law, § 681, et seq., Florida Statutes. "Motor vehicle" is defined in Florida's Lemon Law as follows:

"Motor vehicle" means a new vehicle, propelled by power other than muscular power, which is sold in this state to transport persons or property, and includes a recreational vehicle or a vehicle used as a demonstrator or leased vehicle if a manufacturer's warranty was issued as a condition of sale, or the lessee is responsible for repairs, but does not include vehicles run only upon tracks, off-road vehicles, trucks over 10,000 pounds gross vehicle weight, motorcycles, mopeds, or the living facilities of recreational vehicles. . . .

§ 681.102(15), Fla. Stat. (2006). Defendants argue that a watercraft is an "off-road vehicle" explicitly not covered under the law. There is no binding precedent on this issue, though at least one court, from the Middle District of Florida and in an unpublished opinion, has considered the question directly and ruled against defendants' position:

Defendants argue that a boat is not a motor vehicle under Florida's Motor Vehicle Sales Warranties Act ("Lemon Law"). Plaintiff argues that the boat he purchased from Defendants should be included in the definition of motor vehicles pursuant to Fla.Stat. § 681.102(14). This Court agrees.

There is nothing [in] the definition of motor vehicles in Fla. Stat.

§ 681.102(14), which indicates that the Legislature intended to exclude watercraft in its definition of motor vehicles. In fact, as Plaintiff points out in his memorandum to the Defendants' motions to dismiss, in 1992, the Legislature amended Fla. Stat. § 681.102(14) to exclude the phrase "and is properly operated over the public streets and highways of this state." The Court finds that this deletion signifies the Legislature's desire to expand the scope of motor vehicles under the "Lemon Law".

*Brufsky v. Parker Marine Enters., Inc.,* No. 96301–CIV–FTM–17D, 1997 WL 158309, at *6 (M.D.Fla. Mar.27, 1997).[1] *Brufsky* is of course not binding on this court.

"The first step of statutory construction is to determine whether the language of the statute, when considered in context, is plain." *Wachovia Bank, N.A. v. United States,* 455 F.3d 1261, 1267 (11th Cir.2006). A common sense reading of the statute demonstrates that its primary purpose is to address motor vehicles driven on roads, primarily automobiles and recreational vehicles, not boats. This is consistent with the exclusions for "off-road vehicles" and "trucks over 10,000 pounds gross vehicle weight"; had the statute been intended to cover boats, there presumably also would have been an exclusion for boats exceeding 10,000 pounds or some other appropriate benchmark. The history of the statute, enacted as part of a movement by states nationally to adopt "automobile lemon laws," also supports that interpretation. *See* Duane A. Daiker, *Florida's Motor Vehicle Warranty Enforcement Act: Lemon–*

---

1. The statutory definition of motor vehicle was materially the same at the time *Brufsky* was decided: "a new vehicle, propelled by power other than muscular power, which is sold in this state to transport persons or property, and includes a vehicle used as a demonstrator or leased vehicle if a manufacturer's warranty was issued as a condition of sale, or the lessee is responsible for repairs, but does not include vehicles run only upon tracks, off-road vehicles, trucks over 10,000 pounds gross vehicle weight, the living facilities of recreational vehicles, motorcycles, or mopeds." § 681.102(14), Fla. Stat. (1997).

*Aid For the Consumer,* 45 FLA. L. REV. 253, 254 (1993). While the Lemon Law does not specifically state whether a boat may be a "motor vehicle," defendants' argument that a boat is an "off-road vehicle," not covered under the statute, persuasively suggests that the face of the statute excludes boats.

Another part of the statute indicates the same result. *See, e.g., FDA v. Brown & Williamson Tobacco Corp.,* 529 U.S. 120, 133, 120 S.Ct. 1291, 1301, 146 L.Ed.2d 121 (2000) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." (citations omitted)). In defining "purchase price," the statute states that "trade-in allowance shall be an amount equal to 100 percent of the retail price of the trade-in vehicle as reflected in the NADA Official Used Car Guide (Southeastern Edition) or NADA Recreation Vehicle Appraisal Guide, whichever is applicable, in effect at the time of the trade-in." § 681.102(19), Fla. Stat. The NADA is the National *Automobile* Dealers Association, but it does in fact produce a pricing guide for boats, in addition to the guides for automobiles and recreational vehicles listed in the statute.[2] Notably, however, the statute does not offer a reference applicable to determining the trade-in allowance of a boat.

As defendants point out, the Florida Constitution apparently distinguishes motor vehicles and boats by naming them separately in a list of items subject to license taxation: "[m]otor vehicles, boats, airplanes, trailers, trailer coaches and mobile homes, as defined by law, shall be subject to a license tax. . . ." Fla. Const. art. VII, § 1(b); *see also,* § 327.02(39), Fla. Stat. (2006) (" 'Vessel' is synonymous with boat as referenced in s. 1(b), Art. VII of the State Constitution and includes every description of watercraft, barge, and airboat, other than a seaplane on the water, used or capable of being used as a means of transportation on water.").

It is also worth noting that at least one "vessel lemon law" has been proposed but not passed in the Florida legislature subsequent to adoption of the motor vehicle Lemon Law. In 2002, bills in the Florida House and Senate proposed the " 'Vessel Warranty Enforcement Act,' also known as the 'Vessel Lemon Law,' " which closely tracked the language of the motor vehicle Lemon Law but applied to "vessels." Fla. HB 889 (2002); Fla. SB 1538 (2002). Of course, the bills' failure could be due to a view that they were redundant to preexisting Lemon Law remedies. While they are therefore not conclusive, the proposal of these bills at least suggests that boats are not included under the current Lemon Law because no such "vessel lemon law" would have otherwise been needed.

The language used by at least one Florida court also suggests it applies only to automobiles. A Florida appeals court has stated, in a general description of the statute, that "[t]he Lemon Law was enacted as an alternative remedy for resolving disputes concerning nonconforming *automobiles.*" *Holzhauer–Mosher v. Ford Motor Co.,* 772 So.2d 7, 11 (Fla. 2d DCA 2000) (emphasis added). Indeed, defendants attach as an exhibit the denial, by the Florida Department of Agriculture & Consumer Services, of a request for arbitration in this matter before this case was filed. The reason supplied for the denial was that "under the broad definition of 'motor vehicle', a boat or vessel is not included and the definition

**2.** The *Marine Appraisal Guide* is available for purchase at http://www.nadaguides.com/ priceguides (last visited Feb. 13, 2007).

specifically excludes vehicles used off-road." (Documents 4–2 and 5–2 at 1.)

The *Brufsky* court was correct that the statute was amended to strike the language, "which is operated over the public streets and highways of this state," from the definition of motor vehicle.[3] A review of the statute before and after this change, which came as part of a wholesale revision, does not indicate that the revision of this particular language was designed to broaden the scope of the statute to watercraft. Significantly, off-road vehicles were excluded both before and after the revision. It seems just as reasonable to take a view, contrary to *Brufsky*, that the reference to vehicles on the roads and highways in the law at its creation confirms the impression that motor vehicles were never intended to include boats. Moreover, the purpose of the overall amendment was primarily to address a different purpose: the perceived failure of the arbitration process as it was initially enacted in the statute's remedial provisions. *See* Don Melvin and Jim McNair, *Lemon Law is Sweet News for Car Owners*, S. FLA. SUN–SENTINEL, Nov. 13, 1988, at 1A ("After Jan. 1, new car owners won't have such a tough time getting persistent problems solved because of a new Lemon Law that will take effect in Florida. State officials and consumer advocates say the law will force car manufacturers to buy back new vehicles if they repeatedly fail to fix them.").

While none of the above considerations are binding or dispositive, a number of them are helpful in properly constructing the meaning of the statute in question. For a number of the reasons cited above, and notwithstanding *Brufsky*, I find that Florida's Lemon Law does not apply to boats and will accordingly dismiss count I of the complaint.

### Implied Warranty

Defendants each argue that claims based on an implied warranty in count II (under the Magnuson–Moss Warranty Act, 15 U.S.C. § 2301, et seq.) and count III (under the Florida Uniform Commercial Code ("UCC"), § 671, et seq., Florida Statutes) should be dismissed because the complaint does not allege transactional privity, through a "buyer-seller" relationship.[4] Defendants also deny that any such relationship existed, asserting that they were manufacturers and not sellers. The complaint itself identifies defendants as manufacturers and does not state that either or both of defendants actually sold the boat to plaintiff. Claims under the Magnuson–Moss Warranty Act can be pursued under an implied warranty theory, but "courts have uniformly held that Magnuson–Moss does nothing to alter or modify state law privity requirements. The question of whether privity is required thus hinges entirely on applicable state law." *Gill v. Blue Bird Body Co.*, 147 Fed.Appx. 807, 810 (11th Cir.2005); *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 525 (7th Cir.2003). Under Florida law, an implied warranty cannot exist where there is no privity of contract. *See,*

---

**3.** The definition, which was rewritten as part of a substantial 1988 revision to the definitions section, formerly read: " 'Motor vehicle' means a motor vehicle which is sold in this state and which is operated over the public streets and highways of this state and is used as a means of transporting persons and property. The term 'motor vehicle' includes only those vehicles propelled by power other than muscular power, but the term does not include vehicles run only upon tracks, off-road

vehicles, or mopeds. The term 'motor vehicle' includes a demonstrator or lease-purchase vehicle as long as a manufacturer's warranty is issued as a condition of sale." The amended language became effective in 1989.

**4.** Defendants correctly concede that transactional privity. is not required to support an express warranty claim under the Magnuson–Moss Warranty Act. *See* 15 U.S.C. § 2301(6).

e.g., *Mesa v. BMW of N. Am., LLC,* 904 So.2d 450, 458 (Fla. 3d DCA 2005) ("[plaintiff lessee] cannot maintain a suit against [defendant car manufacturer] for breach of implied warranty [under Magnuson–Moss Warranty Act] as there was no privity of contract between [them]," but can sue manufacturer under written warranty); *Rentas v. DaimlerChrysler Corp.,* 936 So.2d 747 (Fla. 4th DCA 2006) (affirming dismissal of Magnuson–Moss Warranty Act claim premised on implied warranty, due to lack of privity between buyers of used car and car manufacturer); *Powers v. Lazy Days RV Ctr., Inc.,* No. 8:05–CV–1542T17EAJ, 2006 WL 373011, at *2 (M.D.Fla. Feb.16, 2006) (dismissing Magnuson–Moss Warranty claim against recreational vehicle manufacturer based on implied warranty where there was no privity of contract under Florida law).

Defendants each argue that implied warranty claims in counts II (under the Magnuson–Moss Warranty Act) and III (under the Florida Uniform Commercial Code) of the complaint should be dismissed because there was no transactional privity between either defendant and plaintiffs. But the complaint does not allege an absence of privity, and whether there was or was not privity is a factual question that cannot properly be resolved on the instant motion to dismiss. If there was no privity between plaintiffs and a defendant, the defendant may promptly file an appropriate motion for summary judgment, precisely as *Leatherman* contemplates. Any such motion may incorporate by reference the legal argument submitted in support of the motion to dismiss.

### Express Warranty Claims under UCC

█ The complaint alleges, in count III, claims under Florida's UCC for both

implied and express warranties. Privity is a requirement for an implied warranty claim, as noted above. Privity is also required for actions premised on express warranties under Florida's UCC.[5] *See T.W.M. v. Am. Med. Sys., Inc.,* 886 F.Supp. 842 (N.D.Fla.1995) (Vinson, J.) (dismissing UCC claims against surgical implant manufacturer based on implied and express warranties where there was no privity of contract under Florida law, and stating "[t]he law of Florida is that to recover for the breach of a warranty, either express or implied, the plaintiff must be in privity of contract with the defendant. . . . A plaintiff who purchases a product, but does not buy it directly from the defendant, is not in privity with that defendant.") (citing *Kramer v. Piper Aircraft Corp.,* 520 So.2d, 37 (Fla.1988), and *Intergraph Corp. v. Stearman,* 555 So.2d 1282, 1283 (Fla. 2d DCA 1990)). Again, however, the complaint does not allege absence of privity, and the issue of whether there was or was not privity cannot be determined by motion to dismiss.

### Deceptive and Unfair Trade Practices

█ Defendants both argue that count IV of the complaint, which asserts a claim under Florida's Deceptive and Unfair Trade Practices Act, § 501.201, et seq., Florida Statutes, must be dismissed because it fails to allege any "conduct which is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." (Documents 4 and 5 at 8, citing *PNR, Inc. v. Beacon Prop. Mgmt.,* 842 So.2d 773, 777 (Fla.2003).) The plaintiffs have alleged acts which the complaint describes as "unfair" and "unconscionable" and which allegedly involved defendants' "stalling" and attempting "to avoid [their]

---

**5.** The complaint does not allege particular provisions of Florida's UCC, but the court assumes that the claims are posed under the warranty provisions in Florida's version of Article 2 (Sales) of the Uniform Commercial Code, § 672, Florida Statutes. It is not apparent whether this claim could proceed under any other provision of the UCC.

obligation" to plaintiffs. (Document 1–2 at 8–9.) Plaintiffs thus state a claim upon which relief could be granted.

### Other Alleged Claims

Defendants argue that any alleged claims for revocation of acceptance and demand for return of purchase price should be dismissed. Plaintiffs have apparently not asserted a claim for revocation of acceptance in this action. While the factual allegations state that plaintiffs formally notified defendants by letter of such intended revocation, this assertion is apparently not the basis of the relief sought in the complaint. (*See* Complaint, Document 1–2 at 3, ¶ 12.)

 Moreover, the relief sought in claims surviving this order does not exceed that authorized, by statute or otherwise. In each of its four counts, the complaint demands relief consisting of "1. [t]he full purchase price of the vehicle, collateral charges, finance charges, incidental and consequential damages; 2.[c]osts, including expert witness fees and reasonable attorney's fees; and 3.[f]or such other relief as this court deems just and proper." (Complaint, Document 1–2 at 4, 6, 7, 9.) Under the Magnuson–Moss Warranty Act, plaintiff may bring suit "for damages and other legal and equitable relief," and can be awarded costs and expenses, including attorney's fees. 15 U.S.C. § 2310(d)(1) & (2). Under the Florida Deceptive and Unfair Trade Practices Act, a "person may recover actual damages, plus attorney's fees and court costs." § 501.211(2), Fla. Stat. Such relief is also available under the breach of warranty claim in Count III. Therefore, plaintiffs have not demanded more than that to which they might be entitled. These claims will not be dismissed.

For these reasons,

IT IS ORDERED:

The motions by Baja Marine Corporation (document 4) and Mercury Marine (document 5) to dismiss the complaint are GRANTED IN PART and DENIED IN PART. Count I of the complaint, asserting a claim under the Florida Lemon Law, is dismissed. All other claims remain pending. Defendants shall file answers within 10 days. I do *not* direct the entry of judgment under Federal Rule of Civil Procedure 54(b).

SO ORDERED.